UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES GLENN and JOHNNY SPRADLIN, Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 1:21-CV-00006 |
| LLANO COUNTY SHERIFF'S OFFICE, OFFICER JACKSON IDOL, OFFICER STEVE SIFFORD, OFFICER JOHN DOE, LLANO COUNTY SHERIFF BILL BLACKBURN, and LLANO COUNTY, TEXAS, Defendants. | § § § § § § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs James Glenn ("Glenn") and Johnny Spradlin ("Spradlin) file this Original Complaint against Defendants Llano County Sheriff's Office (hereinafter "LCSO"), Officer Jackson Idol (hereinafter "Idol"), individually, Llano County Sheriff Bill Blackburn (hereinafter "Blackburn"), individually, Officer Steve Sifford (hereinafter "Sifford"), individually, Officer John Doe (hereinafter "Doe"), individually, and Llano County, Texas (hereinafter "Llano,"); and for cause of action would show the Court as follows:

## I.     PARTIES

1.     Plaintiff James Glenn is an individual who resides in Texas and during all times relevant to the allegations of this complaint was a citizen of the United States.

2.     Plaintiff Johnny Spradlin is an individual who resides in Texas and during all times relevant to the allegations of this complaint was a citizen of the United States.

3.      Defendant Llano County Sheriff's Office is a unit of local government in the State of Texas.  Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

4.      Defendant Jackson Idol is a United States and Texas citizen and an Officer with the Llano County Sheriff's Office.  At all times relevant to this action, Defendant Idol was a Sheriff's Deputy employed by the Llano County Sheriff's Office to perform duties in the County of Llano.  Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

5.      Defendant Steve Sifford is a United States and Texas citizen and a former Officer with the Llano County Sheriff's Office. At all times relevant to this action, Defendant Sifford was a Sheriff's Deputy employed by the Llano County Sheriff's Office to perform duties in the County of Llano.  Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

6.      Defendant John Doe is a United States and Texas citizen and an Officer with the Llano County Sheriff's Office of unknown identity. At all times relevant to this action, Defendant Doe was a Sheriff's Deputy employed by the Llano County Sheriff's Office to perform duties in the County of Llano.  Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

7.    Defendant Bill Blackburn is a United States and Texas citizen and Sheriff for the Llano County Sheriff's Office.  At all times relevant to this action, Defendant was the Sheriff employed by the Llano County Sheriff's Office to perform duties in the County of Llano. Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

8.    Defendant Llano County, Texas is a unit of local government in the State of Texas. Defendant will be extended the opportunity to accept service of process pursuant to FRCP 4(d). If Defendant fails or refuses to accept service as requested, then the Plaintiffs will request service of process pursuant to FRCP 4(e) upon Defendant.

## II.    JURISDICTION

9.    This action is brought pursuant to 42 U.S.C. §§ 1983, 1988 and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

10.    Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(a)(3), (4) relating to actions arising under 42 U.S.C. § 1983 and by 28 U.S.C. § 1331 (federal question).

## III.    VENUE

11.    Venue is proper in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391.  Plaintiffs' claims arose in whole or in part in the Western District of Texas.

## IV.    FACTUL ALLEGATIONS

### *James Glenn*

12.     On January 5, 2019, James Glenn ("Glenn") was sitting in the passenger seat of his son's truck parked at a stop light at the corner of Main Street and Ford Street in Llano, Texas, when it was suddenly rear-ended by another car.

13.     Glenn got out to check on the driver of the other car, who instead cursed at Glenn and began to argue with him until eventually Llano County Sheriff's Deputy Officer Jackson Idol ("Idol") arrived on the scene.

14.     The driver of the other car admitted fault to the accident.

15.     Idol began yelling at both Glenn and the driver of the car, and eventually began arguing with Glenn exclusively.

16.     Deputy Idol became angry and obsessed with Glenn for exercising his First Amendment right to speak.

17.     While Idol was yelling at Glenn, the driver of the car drove away from the accident scene without giving either Glenn or Idol contact or insurance information.

18.     Instead of following the at-fault driver who fled the scene, Idol searched Glenn's person.

19.     Idol then searched the truck Glenn was a passenger in.

20.     Idol did this to harass Glenn in retaliation for Glenn exercising his First Amendment right to speech.

21.     Idol eventually found an empty beer can crushed up in the passenger-side rear seat.

22.     Idol told Glenn that Glenn had to sign a citation for having an open container or Idol would arrest him.

23.     Glenn denied that he broke any law.

24.     Glenn said that he was a disabled Army veteran.

25.     Idol then told Glenn that Glenn was under arrest.

26.     Idol ordered Glenn to put his hands behind his back.

27.     Glenn obliged the officer as best as he could, even though Glenn had a disability due to a shoulder injury he received during his service in the Army that prevented his arm from fully rotating backwards.

28.     Idol became angry that Glenn was unable to further rotate his arm.

29.     Idol began yelling at Glenn to put his arms behind his back.

30.     At this point, Idol was standing behind Glenn and was holding both of Glenn's arms behind Glenn's back.

31.     Idol had already placed one handcuff on one of Glenn's wrists.

32.     Idol yelled again for Glenn to get both hands behind his back or else he would "put [Glenn] on the ground."

33.     Glenn tried to respond to Officer Idol, but before he could react Idol suddenly wrapped his arm around Glenn's neck in a chokehold before Glenn had a chance to attempt to comply and threw him violently to the ground.

34.     At no point did Glenn strike or attempt to strike Idol or anyone else despite the dangerous and alarming situation he was in.

35.     Idol continued to restrict Glenn's throat.

36.     Glenn was unable to breathe.

37.     Idol applied his weight on top of Glenn, further placing Glenn in harm's way and creating a dangerous situation.

38.     Glenn fell unconscious due to the physical trauma Idol put him in.

39.    Only when Glenn fell unconscious did Idol stop choking Glenn and release the chokehold.

40.    Idol put handcuffs on Glenn.

41.    Glenn started to regain consciousness.

42.    Glenn was disoriented.

43.    Glenn began to try to get up.

44.    A passerby and a police officer from another department, who happened to be walking by, both jumped in to attempt to restrain Glenn.

45.    Idol started to punch Glenn repeatedly in the face and hands.

46.    Idol kept beating Glenn even after Glenn stopped trying to move.

47.    Idol then took Glenn into custody.

48.    Before taking Glenn to jail, the police had to take him to the hospital to receive stitches for his eye injuries caused by Officer Idol beating him.

49.    Idol then put Glenn in jail.

50.    Idol charged Glenn with resisting arrest, assaulting a police officer, and carrying an open container of alcohol.

51.    All charges against Glenn except the open container charge were quickly dropped.

52.    The day after the incident, Glenn was bailed out of jail.

53.    Glenn was taken to the Veteran's Affairs hospital in Waco, Texas, for evaluation.

54.    Glenn was immediately placed into in-patient psychiatric care.

55.    Glenn spent a month recuperating from the trauma that Idol inflicted on him.

56.    Glenn suffered from PTSD prior to Idol's physical assault. Glenn was originally diagnosed with symptoms from depression, anxiety, and PTSD.

57.    Idol's assault served to worsen Glenn's PTSD.

58.    Glenn's health issues worsened immediately after the incident with Idol.

59.    Immediately after the altercation with Idol, Glenn began to experience breathing trouble and chronic fatigue, as well as pain in his hands.

60.    Glenn went to the Veteran's Affairs hospital again several months after the incident with Idol.

61.    While at the hospital, it was discovered that one of Glenn's lungs had collapsed.

62.    The doctors found that half of Glenn's diaphragm had been paralyzed, preventing Glenn's lungs from functioning properly.

63.    A surgeon who operated on Glenn told Glenn's doctors that he/she believed that Glenn's injury was the result of "severe trauma."

64.    The surgeon surmised that Idol's violent choking and repeated punches to Glenn's face likely damaged the nerves of Glenn's diaphragm.

### *Johnny Spradlin*

65.    On January 13, 2019, Johnny Spradlin ("Spradlin") was alone in his home struggling with depression and called the national suicide prevention hotline for help.

66.    Instead of receiving help, LCSO deputies came to Spradlin's home, where they tackled, tasered, and arrested him.

67.    Later that evening, afer his call to the hotline, LCSO deputies Steve Sifford and John Doe arrived at Spradlin's home for a "welfare check."

68.    The deputies knocked on his door, and Spradlin told them to leave.

69.    Eventually, after the deputies refused to leave, Spradlin agreed to step outside his home.

70.    Outside, Spradlin put his hands up and informed the deputies that he had a knife in his back pocket, which he told them they could take from him while they spoke.

71.    Deputy Doe, standing behind Spradlin took the knife from Spradlin.

72.    At this point, any danger was neutralized.

73.    Deputy Doe then asked Spradlin how much he had had to drink, to which Spradlin replied "none of your [expletive] business."

74.    The LCSO Deputies became angry, combative, and obsessed with Spradlin because he exercised his First Amendment right to speak.

75.    Directly after his comments, the deputies immediately informed Spradlin that he was under arrest, and Deputy Doe, from behind Spradlin, tackled him by his neck, slamming him into the ground.

76.    Once Spradlin was on the ground, Deputy Sifford 'drive stunned' Spradlin with his taser.

77.    'Drive stunning' is when the taser is placed directly against the body and activated without deploying the projectiles.

78.    This is a dangerous tactic intended to cause harm and incapacitate a dangerous suspect.

79.    Spradlin was not a dangerous suspect at the time LCSO used this tactic.

80.    The LCSO deputies handcuffed Spradlin on the ground, took him to jail where he spent the night, and charged him with public intoxication, resisting arrest, and attempting to take a weapon from an officer. All charges were later dismissed.

81.     Spradlin was not in public when he was arrested—he was in his own front yard. Spradlin did not resist arrest, and he did not attempt to take a weapon from an officer at any time.

82.     Instead, LCSO deputies arrested and charged Spradlin simply because they did not like the way he spoke to them.

83.     The LCSO deputies did this to harass Spradlin in retaliation for Spradlin exercising his First Amendment right to speech.

84.     Spradlin had bruises all over his body from being tasered by Deputy Sifford and abrasions on his head from being violently slammed to the ground by LCSO Deputy Doe. Spradlin also badly bit his tongue when Doe slammed him to the ground.

85.     LCSO and Llano County refused to provide any medical attention for Spradlin while he was in jail even though he was obviously injured and had been tasered several times.

86.     Instead, an LCSO mental health officer visited Spradlin while he was in jail. The mental health officer said that he wished LCSO had called him (the mental health officer) instead of sending the LCSO deputies, because then this would not have happened.

87.     LCSO and Llano County had a mental health officer on staff but did not call him to respond to a mental health crisis. Instead, they sent deputies Sifford and Doe, who assaulted, tasered, and falsely arrested him.

88.     Spradlin was struggling with depression, near a crisis point, and needed compassion and help. Instead of helping him, LCSO deputies assaulted, tasered, and falsely arrested him.

89.     The arrest, tasering, and mistreatment by LCSO deputies had a deep and lasting impact on Spradlin, physically, mentally, and emotionally.

90.     Llano County Sheriff Bill Blackburn said in interviews that he stood by the actions of his deputies even after reviewing the body cam footage of the arrest. When asked if he agreed with the manner of the arrest, Sheriff Blackburn said that during mental health calls, he would rather arrest the person than find them hanging in their closet later.[1]

91.     Blackburn endorsed their actions and said, in effect, that it's better to be safe—and arrest someone in a mental health crisis—than be sorry.

### *Llano County*

92.     Idol's unprovoked and unwarranted takedown of the compliant and disabled Glenn, and Sifford and Doe's unprovoked and unwarranted takedown and tasering of Spradlin, are not isolated incidents, for Idol, Sifford, Doe, or LCSO.

93.     LCSO has a history of failing to adequately train, supervise, or discipline officers.

94.     LCSO has a history of continuing to employ officers long after their propensity for excessive force and unlawful arrests becomes clear.

95.     Prior to joining the LCSO, Idol had been terminated from the San Saba Police Department for lying and multiple instances of excessive force.

96.     San Saba County and Llano County are adjacent counties in Texas and San Saba and Llano are roughly 30 miles apart.

97.     Idol also had been under investigation for stalking a woman with whom he had been having an extra-marital affair.

98.     Despite knowing all these facts, the LCSO still to this day employs Idol.

---

[1] "'I'd rather take someone into custody and bring them to jail and get them help then have to go to their house and take them out of a closet where they've hung all night,'" says Sheriff Blackburn."
https://cbsaustin.com/news/local/llano-co-deputies-headlock-drive-stun-man-during-mental-health-welfare-check

99.    In July 2019, Sifford was charged with Assault Family Violence and Unlawful Restraint after the Llano Police Department received a Domestic Violence complaint regarding him. He was ultimately discharged by the LCSO.

100.    In September 2019, Sifford was arrested on a felony charge for possession of child pornography.

101.    The citizens of Llano are still being subjected to violent and unlawful behavior by the LCSO.

102.    The unwarranted arrests and assaults of Glenn and Spradlin by LCSO deputies occurred only eight days apart, in January 2019.

## V.    CAUSE OF ACTION: EXCESSIVE FORCE AND ARREST WITHOUT PROBABLE CAUSE IN VIOLATION OF 42 U.S.C. § 1983

103.    Plaintiffs adopt and incorporate herein by reference all preceding paragraphs.

104.    Plaintiff Glenn brings claims against Jackson Idol, in his individual capacity, pursuant to 42 U.S.C. § 1983 and § 1988 for excessive force and arrest without probable cause.

105.    Plaintiff Glenn has a valid claim under this statute because Plaintiff Glenn has cognizable liberty interests to due process of law and to be free from the use of excessive force and false arrest / false imprisonment without probable cause by a police officer pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

106.    Idol acted under color of his office and employment as an officer for the Llano County Sheriff's Office.

107.    Plaintiff Glenn has cognizable liberty interests to be free from excessive force and arrest without probable cause by police officers pursuant the Fourth, Fifth, and Fourteenth

Amendments of the United States Constitution. Plaintiff Glenn was deprived of his liberty interest when he was assaulted, falsely arrested, and jailed due to the actions of Idol and Blackburn.

108.    Idol's use of excessive force, false arrest, and subsequent imprisonment of Plaintiff Glenn took place under color of law. At all times, Idol acted within the course and scope of his employment with the Llano County Sheriff's Office and under the color of law.

109.    Idol was aware that his conduct was unlawful and violated Plaintiff Glenn's civil rights by falsely arresting him with without probable cause for alleged crimes.

110.    Idol's use of force was unreasonable under the circumstances and thus excessive. The severity of the alleged crime was minimal.  Plaintiff Glenn was not actively resisting arrest or attempting to evade arrest by flight. Plaintiff Glenn posed no threat to Idol.

111.    Plaintiff Glenn has suffered a violation of his civil rights as protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in violated of 42 U.S.C. § 1983 and § 1988.

112.    The Llano County Sheriff's Office and the persons employed within the chain of command with the Llano County Sheriff's Office were involved directly in the violation of Plaintiff's civil rights.

113.    Plaintiff Spradlin brings claims against Officer Sifford and Officer Doe, in their individual capacities, pursuant to 42 U.S.C. § 1983 and § 1988 for excessive force and arrest without probable cause.

114.    Plaintiff Spradlin has a valid claim under this statute because Plaintiff Spradlin has cognizable liberty interests to due process of law and to be free from the use of excessive

force and false arrest / false imprisonment without probable cause by a police officer pursuant to the Fourth, Fifth, Eight, and Fourteenth Amendments of the United States Constitution.

115.    Officer Sifford and Officer Doe acted under color of their office and employment as officers for the Llano County Sheriff's Department.

116.    Plaintiff Spradlin has cognizable liberty interests to be free from excessive force and arrest without probable cause by police officers pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. Plaintiff Spradlin was deprived of his liberty interest when he was falsely arrested, beaten, tasered, and jailed due to the actions of Officer Sifford and Officer Doe.

117.    Officer Sifford and Officer Doe's use of excessive force, false arrest, and subsequent imprisonment of Plaintiff Spradlin took place under color of law. At all times, Officer Sifford and Officer Doe acted within the course and scope of their employment with the Llano County Sheriff's Office and under the color of law.

118.    Officer Sifford and Officer Doe were aware that their conduct was unlawful and violated Plaintiff Spradlin's civil rights by falsely arresting him without probable cause and by using excessive force against him.

119.    Officer Sifford and Officer Doe's use of force was unreasonable under the circumstances and thus excessive. Plaintiff Spradlin was not actively resisting arrest at the time. Using force by tackling an individual from behind by his neck while he was not resisting and posed no threat was objectively unreasonable. Using potentially deadly force against an individual by tasering him while he was on the ground, not resisting, and restrained by an officer was objectively unreasonable.

120.    Plaintiff Spradlin has suffered a violation of his civil rights as protected by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983 and § 1988.

## VI.    CAUSE OF ACTION: *MONELL* LIABILITY, LLANO COUNTY AND THE LLANO COUNTY SHERIFF'S OFFICE

121.    Plaintiffs adopt and incorporate herein by reference all preceding paragraphs.

122.    Plaintiffs bring claims against Llano County and the LCSO under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978).

123.    Llano County Sheriff Bill Blackburn is responsible for establishing the policies, rules, regulations, ordinances, and procedures under which each and every one of the LCSO employees must act.

124.    The use of excessive force and the arrest without probable cause of the citizens of Llano County, Texas, including Plaintiffs, by members of the LCSO was so widespread and pervasive as to have the force of law.

125.    Further, the lack of policies and procedures to provide for the safe and lawful treatment of individuals detained by the police amounted to a widespread practice that, although not explicitly authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law.

126.    The lack of established policies, rules, regulations, and procedures caused the violation of Plaintiffs' civil rights under the United States Constitution, and, consequently, the damages suffered by Plaintiffs.

127.    As stated in paragraphs 92-102, above, the violation of Plaintiffs' rights by Defendants was not an isolated incident; violating the rights of Plaintiff and those similarly situated to Plaintiffs was the rule, not the exception, of Llano County by and through the LCSO.

128.    On information and belief, the policymakers within the LCSO and Llano County actually or constructively knew or should have known that the lack of policy, rule, regulation or procedure would cause this type of civil rights violation. This is because of the widespread nature of the custom, general knowledge of its existence, and numerous opportunities and responsibilities of the responsible policymakers to be informed.

129.    Sheriff Blackburn, as Sheriff for Llano County and the Llano County Sheriff's Office, was a policymaker with respect to Llano County and the LCSO. As Sheriff, Sheriff Blackburn had final policymaking authority by direct delegation from the Llano County governing body, both express and implied, with respect to the unconstitutional actions taken by the LCSO and its officers, as well as the lack of action taken in response to constitutional violations.

130.    Sheriff Blackburn ratified the unconstitutional actions of Officers Sifford and Doe. In media interviews regarding Spradlin's arrest, Sheriff Blackburn said he stands by his officers (Sifford and Doe) and their actions in Spradlin's arrest.

131.    As policymaker for the County, Sheriff Blackburn explicitly approved the officers' actions, thus imputing liability to the County. *See Davidson v. City of Stafford*, 848 F.3d 384, 395-396 (5th Cir. 2017), as revised (Mar. 31, 2017) (citing *Monell*, 436 U.S. at 690–91)]. Ratification of an officer's decision by a policymaker with final decision-making

authority may constitute the official policy of the municipality. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 926, 99 L. Ed. 2d 107 (1988).

132.    LCSO and Llano County had a de facto policy or custom of arresting individuals who were experiencing mental health crises or when responding to mental health calls, even in the absence of any probable cause for such arrest—effectively, arrest first, ask questions later. This policy or custom was recognized, ratified, and explained by Sheriff Blackburn in response to questions about Spradlin's arrest.

## VII.    CAUSE OF ACTION: INADEQUATE TRAINING, LLANO COUNTY SHERIFF'S OFFICE AND LLANO COUNTY

133.    Plaintiffs adopt and incorporate herein by reference all preceding paragraphs.

134.    Plaintiffs bring claims against Llano County and the LCSO under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978).

135.    The LCSO and Llano County provided inadequate training and supervision, leading to the constitutional violations in this case.

136.    The training and supervision policy procedures of the City of Llano's policymaker were inadequate, the City of Llano's policymaker was deliberately indifferent in adopting such policies, and the inadequate training and supervision policies directly caused Plaintiff's injury.

137.    These violations include but are not limited to the unlawful and unwarranted takedowns of Plaintiffs Glenn and Spradlin and the unlawful and unwarranted arrests of Glenn and Spradlin.

138.    Llano County and the LCSO trained their officers to default to arresting individuals in mental health crisis or when responding to mental health calls, regardless of justification. This predictably led to the violations of citizens' constitutional rights, including the rights of the Plaintiffs in this case. Sheriff Blackburn reiterated his support of this policy with regard to the arrest of Spradlin.

## VIII.    CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION – LLANO COUNTY SHERIFF'S OFFICE AND LLANO COUNTY

139.    Plaintiffs adopt and incorporate herein by reference all preceding paragraphs.

140.    Plaintiffs bring claims against Llano County and the LCSO under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978).

141.    The Llano Police Department and the City of Llano negligently hired and/or retained one or more of the officers, leading to the constitutional violations in this case.

142.    On information and belief, there was a strong connection between the background of the particular officers and the violations that occurred making it highly likely that they would inflict the particular injuries suffered by the Plaintiffs.

143.    On information and belief, the Llano Police Department and the City of Llano hired and/or retained these individuals after they had notice of their propensities for constitutional violations and abuse of authority.

## IX.    DELIBERATELY INDIFFERENT SUPERVISION – BLACKBURN

144.    Plaintiffs adopt and incorporate herein by reference all preceding paragraphs.

145.    Plaintiffs bring claims against Blackburn, in his individual capacity, as Sheriff of Llano County for supervising Idol, Sifford, and Doe and the LCSO as a whole with deliberate indifference.

146.    Blackburn, as the Sheriff of Llano County and supervisor of the LCSO knew or should have known about the danger that Idol, Sifford, and Doe would engage in unconstitutional conduct (use of excessive force and arrest without probable case). As the Sheriff, Blackburn had a duty and the authority to take steps to prevent Idol, Sifford, and Doe from engaging in unconstitutional conduct.

147.    Blackburn knew or should have known that the failure to supervise or discipline Officer Idol for violations of citizens' civil rights would cause the type of civil rights violation suffered by Plaintiff Glenn.

148.    Defendant willfully and wantonly deprived Plaintiffs of their constitutionally protected civil rights afforded to them by the Constitution of the United States of America and the Fourth, Fifth, Eighth, and Fourteenth Amendment, by conspiring to and/or engaging in conduct which caused, encouraged, and continued violations of Plaintiffs' civil rights. Defendants are liable for these civil rights violations pursuant to 42 U.S.C. § 1983 and § 1988.

149.    All of these constitutional protections were taken away from Plaintiffs by and as a result of Defendant's gross disregard for the law and gross disregard for the United States Constitution while Defendants were acting under color of authority and law.

## X.    DAMAGES

150.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered economic and actual damages, including past and future pain and mental anguish, lost income, back wages, interest on back pay and front pay, past and future pecuniary losses, emotional pain

and suffering, inconvenience, mental anguish, loss of earning capacity, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## XI.    COMPENSATORY DAMAGES

151.    Plaintiffs additionally bring suit for compensatory damages, including emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## XII.    PUNITIVE DAMAGES

152.    The conduct committed by Defendants Idol, Blackburn, Sifford, and Doe against Plaintiffs is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiffs. Therefore, Plaintiffs additionally bring suit for punitive damages.

## XIII.    ATTORNEYS' FEES AND EXPERT FEES

153.    Plaintiffs seek all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiffs additionally bring suit for expert fees.

154.    As a result of Defendants' conduct and their deliberate indifference to Plaintiffs' rights, Plaintiffs were forced to retain counsel.

## XIV.    DEMAND FOR JURY TRIAL

155.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all the issues in this case and tenders herewith the requisite jury fee.

## XV.    PRAYERS FOR RELIEF

156.    WHEREFORE, cause having been shown, Plaintiffs pray for, on trial of this just cause, judgment against Defendants as follows:

a.  Judgement against Defendants for violations of Plaintiffs' civil rights, under 42 U.S.C. § 1983 and § 1988;

b.  Judgement jointly and severally against Defendants for the following damages:

   i.  Damages for medical expenses in the past and future;

   ii.  Damages for pain and suffering in the past and future;

   iii.  Damages for mental anguish in the past and future;

   iv.  Damages for impairment in the past and future;

   v.  Actual damages for attorney fees for the defense;

   vi.  Exemplary damages against Defendants Idol, Blackburn, Sifford, and Doe;

   vii.  Reasonable attorneys' fees and costs of court;

   viii.  Pre-judgement and post-judgement interest as allowed by law; and

   ix.  Such other and further relief at law or in equity, special, or general to which Plaintiffs may show themselves to be justly entitled.

Respectfully Submitted,
**KAPLAN LAW FIRM, PLLC**
406 Sterzing Street
Austin, Texas 78704
Telephone: (512) 553-9390
Telecopier: (512) 692-2788
www.kaplanlawatx.com

By: */s/ Matthew Caponi*
**Austin Kaplan**
State Bar No. 24072176
**Matthew "Maff" Caponi**
State Bar No. 24109154
akaplan@kaplanlawatx.com
mcaponi@kaplanlawatx.com